UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD MUHAMMAD,

          Plaintiff,

                                          Case number 06-10325

v.                                        Honorable Julian Abele Cook, Jr.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

ORDER

      In this lawsuit, the Plaintiff, Gerald Muhammad, challenges a final decision by the Defendant, Commissioner of Social Security ("Commissioner"), who had denied his application for Social Security disability benefits. Both parties have filed motions for summary judgment, with each movant asserting that there are no genuine issues of a material fact to be resolved by the Court in this legal proceeding.

      On August 11, 2006, the magistrate judge, to whom these two dispositive motions had been submitted for an evaluation of the parties respective arguments, produced a report in which he recommended, in essence, that this Court should deny Muhammad's motion for summary judgment, and grant the Commissioner's application for dispositive relief according to the standards in Fed.R.Civ. 56.

I.

      On November 27, 2002, Muhammad filed a petition for Social Security disability insurance benefits, claiming that he was disabled due to severe back and foot pain. However, and after being

rejected initially administratively in connection with his quest for disability insurance benefits, Muhammad's appeal was reviewed by an administrative law judge who concluded that this petitioner had retained a residual functional capacity to perform a limited range of light work which would permit a sit-stand employment option.  Ultimately, the administrative law judge concluded that Muhammad could perform his past relevant work duties, as well as a significant number of light jobs.[1]   In rendering his opinion, the administrative law judge determined that although Muhammad had suffered from chronic back and foot pain, his impairment was not sufficiently severe to satisfy or equal the listing of impairments.

The official record indicates that Muhammad had been employed as a labor union official and a team coordinator at the Chrysler Motors Corporation which required him to engage in a significant amount of walking and standing.  His job responsibilities obligated  him to bend and reach above his head on a regular basis.  Muhammad eventually stopped working in 2002 because his severe leg and foot pain prevented him from sitting, standing or walking for extended periods of time or performing any household or yard work.  He also indicated that it became necessary for him to lie down in order to acquire some form of relief from the pains which formed the basis for his application to the Social Security Administration. During the administrative process, a vocational expert evaluated the range of Muhammad's employment situation to be between a "light

_____

[1]Light jobs are considered by the Social Security Administration ("SSA") to be those that involve "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [an individual] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

skilled" activity to" medium skilled" activity.   The vocational expert also indicated that if Muhammad's submissions of pain and discomfort were accepted without contradiction, there would not be any jobs that he could perform within the national economy.   On the other hand, the vocational expert also opined if Muhammad was capable of performing light work, he could perform his past duties as a labor union official and Chrysler Motors team coordinator since both jobs provided a sit-stand option and did not require any extensive exertion of effort.

In February 2003, Dr. Habib Gennaoui opined that Muhammad was able to walk with a normal gait. This diagnosis was confirmed by another physician, Dr. Lawrence Eilender, who noted that Muhammad's pain disappeared once he sat down. In August 2003, Dr. Larry Silverman reported that Muhammad acknowledged that his symptoms of pain occurred only occasionally when standing and walking.   However, Dr. Silverman modified his opinion in October 2004 when he concluded that Muhammad was permanently disabled.

In rendering his findings, the administrative law judge concluded that Muhammad possessed the ability to perform light work while in a sitting position, and could rest after standing for approximately twenty minutes at a time.   Dr. Silverman's medical opinion was also rejected by the administrative law judge because, in his view, this medical conclusion offered little objective evidence, and was based primarily on Muhammad's subjective complaints.   Ultimately, the administrative law judge determined that Muhammad retained the residual capacity for a restricted range of light work, and given that he could perform light work as a labor union officer and automotive team coordinator, proof of disablement within the meaning of the Social Security Act had not been established.

II.

The final decision of the Commissioner is reviewable by a district court to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). The term, "substantial evidence," is considered to be "more than a scintilla but less than a preponderance." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. V. NLRB*, 305 U.S. 197, 229, (1938)). "It is such reasonable evidence as a reasonable mind might accept as [being] adequate to support a conclusion." *Id.* Accordingly, "findings [that are] based on [the] credibility of the applicant are to be accorded great weight and deference," and should not be disturbed. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Thus, it is incumbent upon the court to evaluate the administrative record as a whole. *Walker v. Secretary of Health,* 884 F.2d 241, 245 (6th Cir. 1989). Furthermore, unless an impairment prevents a claimant from returning to his previous work or participating in a substantial, gainful activity within the national economy - especially when the claimant's age, education, and work experience are considered - the individual is not entitled to disability benefits. 42 U.S.C. § 423(d)(2)(A). If a claimant bases his disability on severe pain, he must demonstrate that (1) the objective medical evidence confirms the severity of the alleged pain, and (2) the objectively established medical condition is of such severity that it is reasonable to assume that the pain resulted from the condition. *Brown v. Bowen,* 1987 U.S. App. LEXIS 16897, 13 (6th Cir. 1987).

In his evaluation of the record, the magistrate judge, to whom the parties' summary judgment motions were assigned for a report and recommendation, opined that (1) there was substantial evidence which supported the Commissioner's determination that Muhammad had retained the residual capacity to perform a range of light work which included a sit-stand

4

employment option, and (2) the objective medical evidence did not support this petitioner's allegations of disabling pain.

In his appeal to this Court, it is contended by Muhammad that (1) he has not retained the residual functional capacity to perform light work,[2] notwithstanding the incorrect conclusions by the magistrate judge, and (2) the administrative law judge failed to apply the requisite six-step analysis, as delineated in 20 C.F.R. 404.1527(d)(2),[3] when considering the appropriate weight to

---

[2] It should be noted that Muhammad denies that he has ever alleged "total disabling" symptoms of back, leg or foot pain.

[3] 20 C.F.R 404.1527(d)(2) provides:

How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.

(2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.

(i) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will

5

be accorded to the medical opinion of his physician.

III.

The medical records indicate that (1) Muhammad retained the ability to walk with a normal gait, (2) his pain decreased when given medication, and (3) he declined the opportunity to undergo surgery and physical therapy. These characteristics appear to be consistent with an individual who is not completely disabled. Furthermore, Muhammad's non-work related activities clearly suggest

---

look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's opinion more weight than we would give it if it were from a nontreating source.

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

(6) Other factors. When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

6

that he is not a disabled person, as defined by the Social Security Act, because of his (1) ability to perform a limited amount of household chores, (2) attendance at church and parent-teacher conferences, (3) employment of crossword puzzles and computers, and (4) operation of a motor vehicle. On the basis of this record, the administrative law judge concluded that Muhammad's daily activities undermined the credibility of his subjective complaints of disabling pain.

Muhammad also takes issue with the administrative law judge's alleged failure to adopt the six step procedure, as found in 20 C.F.R. § 404.1527(d)(2), when assessing his physician's medical opinions. Notwithstanding his argument, the Court notes that the administrative law judge did set forth a sufficient basis for declining to give weight to Muhammad,'s treating physicians.[4] Specifically, the administrative law judge indicated that Muhammad's physician's report had been rejected because his conclusions were essentially based upon Muhammad's subjective complaints, and not on objective clinical records. Hence, Muhammad's argument on this issue is flawed.

IV.

As a result of its review of the official record in this cause, the Court is satisfied that the administrative law judge had a sufficient basis upon which to reject Muhammad's application for disability benefits. Hence, and for the reasons that have been stated above, this Court will, and does, (1) adopt the recommendation of the magistrate judge, (2) deny Muhammad's motion for

---

[4] In rendering his conclusions, the administrative law judge specifically stated:

"The claimant's podiatrist and Dr. Silverman recommended he be seated for six hours and found that his pain would interfere with attention and concentration frequently and occasionally. However, these conclusions are not substantiated by clinical records which show the claimant's pain was only intermittent. These doctors apparently relied heavily on the subjective report of symptoms and limitations provided by the claimant and seemed to uncritically accept as true most, if not all, of what he reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's complaints."

summary judgment, and (3) grant the Commissioner's request for similar relief.


        IT IS SO ORDERED.

Dated: <u>October 19, 2006</u>                    <u>s/ Julian Abele Cook, Jr.        </u>
        Detroit, Michigan                    JULIAN ABELE COOK, JR.
                                             United States District Court Judge



                        <u>Certificate of Service</u>

        I hereby certify that on October 19, 2006, I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

                                             <u>s/ Kay Alford        </u>
                                             Courtroom Deputy Clerk